Matter of PPDAI Group Securities Litigation.


654482/2018

Saliann Scarpulla, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 26, 27, 28, 29, 30, 31, 32, 33, 34, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 60, 85, 86
were read on this motion to/for STAY.
The following e-filed documents, listed by NYSCEF document number (Motion 003) 72, 73, 74, 75, 76, 77, 78, 79, 82, 83, 84
were read on this motion to/for STAY. 
Upon the foregoing documents, it is
In this action alleging violations of the Securities Act of 1933 ("'33 Act"), defendants PPDAI Group, Inc. ("PPDAI"), Credit Suisse Securities (USA) LLC ("Credit Suisse"), Citigroup Global Markets Inc. ("Citigroup"), Keefe, Bruyette & Woods ("KBW"), Law Debenture Corporate Services Inc. ("Law Debenture"), and Giselle Manon ("Manon") (collectively, "Moving Defendants") move, pursuant to CPLR 2201, for a stay of the putative class action brought by plaintiffs Yizhong Huang ("Huang") and Ravindra Vora ("Vora") (together, "Plaintiffs") pending final disposition of an action currently pending in federal court.[FN1]
Moving Defendants also move, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 77z-1(b)(1), CPLR 3214(b) and Commercial Division Rule 11(d), for an order staying discovery pending resolution of any motions to dismiss this action.
PPDAI, a Cayman Islands corporation with primary operations in China, was co-founded by defendants Jun Zhang ("Zhang"), Tiezheng Li ("T. Li"), Honghui Hu ("Hu") and Shaofeng Gu ("Gu") in 2007.[FN2]
As per its website, PPDAI is an online consumer [*2]finance marketplace that connects borrowers and investors "whose needs have not been met by traditional financial institutions."[FN3]
PPDAI, through its full-service peer-to-peer ("P2P") lending platform, generates revenue "primarily from fees charged to borrowers for [its] services in matching them with investors and for other services [it] provide[s] over the loan lifecycle." Other revenue-generating services include loan facilitation service fees, post-facilitation service fees, collection fees and management fees.
To raise additional capital, PPDAI engaged in an initial public offering ("IPO") in November 2017. The offering materials ("Offering Materials") included a prospectus ("Prospectus") and Forms F-1 and F-5 registration statements (the "Registration Statement"). The SEC declared the Registration Statement effective on November 9, 2017 and, on November 13, 2017, Moving Defendants priced the American Depositary Shares ("ADS") at $13 per share and filed the final prospectus for the IPO. 
PPDAI appointed Law Debenture as its agent for the service of process in the U.S. and the latter's service of process officer, Manon, allegedly signed the Offering Materials. Credit Suisse, Citigroup and KBW served as underwriters for the IPO which, Plaintiffs allege, generated $221 million in proceeds before underwriting discounts and commissions. 
According to the CAC, Huang and Vora acquired ADSs of PPDAI in connection with the IPO "pursuant and/or traceable to" the Offering Materials. Plaintiffs allege that, by the Offering Materials' effective date, China increased its scrutiny and regulation of the P2P lending industry due to the publicity of widespread complaints about lending and collection improprieties. Plaintiffs further allege that PPDAI engaged in the type of lending and collection misconduct, such as usurious loan rates and abusive collection practices, that was the subject of China's scrutiny. The CAC states that investors whom Moving Defendants solicited to purchase ADSs in the IPO and investors who purchased ADSs pursuant and/or traceable to the Offering Materials were not aware of the scope of the threat to PPDAI's business that was posed by China's existing and prospective regulations.
For example, the CAC alleges that the Offering Materials represented that
[a]lthough the interest rates of all our loan products are not more than 36% per annum, certain loans facilitated by our platform have interest rates over 24% per annum.
***
The transaction fee we charge is recognized as our revenue and lenders will not receive any part of the transaction fee we charge from borrowers. As a result, we do not believe that our business operation violates this provision even though in some cases the combination of the interest rate and the transaction fee rate we charge from borrowers exceeds 36%.
Plaintiffs allege that PPDAI's exposure to loans with rates higher than 36% was significant [*3]because, under Chinese law, the part of any interest rate in excess of 36% is unenforceable. Plaintiffs assert that Moving Defendants failed to disclose the extent of its exposure to these unenforceable loans in the Offering Materials. 
Plaintiffs claim that, less than a month following the IPO, analysts reported that PPDAI's average all-in rate of interest grossly exceeded 36%. Credit Suisse estimated that "the blended annualized cost [PPDAI] charged is around 60%." Plaintiffs further claim that, in December 2017, after China promulgated regulations prohibiting all-in rates over 36% and the issuance of Credit Suisse's analyst report, PPDAI's trading price substantially declined.
In addition, in the Offering Materials, PPDAI represented that it had previously engaged in practices with institutional investors that could be classified as credit enhancement practices prohibited by the Guidelines on Promoting the Healthy Development of Online Finance Industry and the Interim Measures on Administration of Business Activities of Online Lending Information Intermediaries. The Offering Materials noted that PPDAI no longer engaged in such practices, stating that, "[w]e have changed the cooperation model with these institutional investors and have ceased such practices as of the date of this prospectus."
Plaintiffs allege that, contrary to the assurances in its Offering Materials, PPDAI engaged in prohibited credit enhancement practices, "exposing PPDAI to fines and regulatory repercussions and jeopardizing PPDAI's ability to do business." A July 18, 2018 UBS analyst report noted that the continued engagement in credit enhancement practices by PPDAI and other P2Ps created "downside risks to their margins." Allegedly, over the two-day period after the UBS report, PPDAI's trading price again declined. 
The Offering Materials also stated that PPDAI
Primarily rel[ies] on [its] in-house collection team to handle the collection of delinquent loans. [PPDAI] also engage certain third-party collection service providers to assist [] with payment collection from time to time. If those collection methods are viewed by the borrowers or regulatory authorities as harassments, threats or other illegal conducts, we may be subject to lawsuits initiated by the borrowers or prohibited by the regulatory authorities from using certain collection methods.
Plaintiffs contend that the statement regarding collection methods was misleading because, at the time of the Offering Materials, PPDAI was engaging in improper collection methods and had received complaints about its actions. Plaintiffs also contend that PPDAI's collection practices also contravened Chinese law. 
Lastly, the CAC states that PPDAI had an affirmative obligation to disclose facts in the Offering Materials required by Item 303 of Regulation S-K, including information regarding known trends, uncertainties or events. Plaintiffs allege that PPDAI failed to disclose uncertainties and risks that were known to it at the time of the Offering Materials including those (1) "associated with its practice of imposing total annualized borrowing costs in excess of 36% of the loan amount;" and (2) "associated with its predatory, unethical and illegal loan origination and collection practices."
Based on the foregoing, Huang filed a complaint on September 10, 2018 alleging violations of §§11, 12(a)(2) and 15 of the 1933 Act in connection with the alleged materially misleading statements and omissions in PPDAI's IPO Offering Materials. Vora filed a similar complaint on September 27, 2018. These actions were then consolidated, [*4]by a stipulation that I so ordered, on October 16, 2018.
The parties had a preliminary conference in this case on November 7, 2018. On November 26, 2018, Weichen Lai filed the EDNY Action alleging violations of the '33 Act and making virtually the same allegations contained in the earlier-filed Huang and Vora complaints. On December 17, 2018, Plaintiffs filed the CAC, which amplified the factual allegations and added a defendant (Law Debenture). Meanwhile, on January 8, 2019, plaintiff in the EDNY Action filed an amended complaint, prior to the appointment of a lead plaintiff, and added a fraud claim under the Securities Exchange Act of 1934 ("'34 Act").
Moving Defendants originally moved to stay this action by Order to Show Cause. That motion was later withdrawn without prejudice and Moving Defendants refiled this motion for a stay on notice. Moving Defendants also request an order staying discovery in this action until the resolution of any motions to dismiss.
Discussion
I. Motion to Stay Action Pursuant to CPLR 2201
CPLR 2201 states that "[e]xcept where otherwise prescribed by law, the court in which an action is pending may grant a stay of proceedings in a proper case, upon such terms as may be just." A trial court's decision on a motion pursuant to CPLR 2201 is discretionary. Mook v. Homesafe America, Inc., 144 AD3d 1116, 1117 (2d Dept. 2016).There are numerous factors that a court may consider in determining whether to issue a stay: 1) which forum will offer a more complete disposition of the issues; 2) which forum has greater expertise in the type of matter; 3) which action was commenced first and the stage of the litigations; 4) whether there is substantial overlap between the issues raised in each court; 5) whether a stay will avert "duplication of effort and waste of judicial resources;" and 6) whether plaintiffs have demonstrated that they would be prejudiced by a stay. Asher v. Abbott Laboratories, 307 AD2d 211, 211-212 (1st Dept. 2003); see also Reaves v. Kessler, No. 654485/2015, 2017 WL 2482948 (Sup. Ct. NY Cty. June 8, 2017). Below I consider these factors.
A. Identity of Parties, Substantial Overlap of Issues and Complete Disposition
Moving Defendants argue that a "majority of the [Moving] Defendants are named in both actions." Plaintiffs note, however, that there is not complete identity of parties, as four Moving Defendants in this action were not included in the EDNY Action. I note that two of the Moving Defendants on this motion — Law Debenture and Manon — are not named in the EDNY Action. This fact weighs in favor of proceeding with the '33 Act claims in this court. 
Moving Defendants next contend that there is a substantial overlap of the issues in this case and the EDNY Action in that both assert '33 Act claims and seek money damages. Further, Moving Defendants posit that the EDNY Action offers more complete relief because only a federal court can reach a complete resolution of all of Plaintiffs' claims. In opposition, Plaintiffs urge that their deliberate choice to pursue this case on a narrower basis by only bringing "easier-to-plead-and-prove" '33 Act claims in this forum [*5]should not be overlooked on grounds of more complete resolution in federal court. Plaintiffs also assert that the federal action will not actually offer a complete disposition because the '33 Act claims in the EDNY Action are time-barred by the one-year statute of limitations.
I disagree with Moving Defendants that the EDNY Action necessarily offers more complete relief than this action because if, as Plaintiffs argue, the '33 Act claims are time-barred in federal court, then this Court is the only forum that can resolve the '33 Act claims. [FN4]
And, if only the '34 Act claims survive in federal court, overlapping of issues will be reduced. Thus, consideration of party identity, substantial overlap of issues and complete disposition does not support imposition of a stay in this action. 
B. First to file
Although it is not dispositive on a motion to stay, the "general rule in New York is that 'the court which has first taken jurisdiction is the one in which the matter should be determined and it is a violation of the rules of comity to interfere.'" In re Topps Co., Inc. S'holder Litig., No. 600715/07, 2007 WL 5018882, at *3 (Sup. Ct. NY Cty. June 8, 2007) (citation omitted). The first to file rule, however, should not be applied mechanically irrespective of other considerations. AIG Fin. Prods. Corp. v. Penncara Energy, LLC, 89 AD3d 495, 496 (1st Dept. 2011). 
It is undisputed that Plaintiffs commenced this action two and a half months before [*6]the EDNY Action was commenced. Moving Defendants argue that, even though first-filed actions are often given priority, that rule should not be applied here because the EDNY Action offers a complete disposition of the issues. 
Although it is not dispositive, being first to file is still "significant." Certain Underwriters at Lloyds, London v. Millennium Holdings LLC, No. 600626/06, 2006 WL 2546202, at *7 (Sup. Ct. NY Cty. Aug. 8, 2006). And, in Cyan, Inc. v. Beaver County Employees Ret. Fund, 138 S.Ct. 1061, 1075 (2018), the Supreme Court made clear that state courts have subject matter jurisdiction to hear '33 Act claims. If the first-to-file rule is uniformly abandoned whenever later filed federal court actions assert other federal claims along with '33 Act claims, New York state courts would never exercise their jurisdiction to resolve first-filed '33 Act claims. This result would render Cyan meaningless. See Cyan, Inc. v. Beaver County Employees Ret. Fund, 138 S.Ct. 1061, 1075 (2018); Hoffman v. AT & T Inc., No. 650797/2019, 2019 WL 2578360 at *2 (Sup. Ct. NY Cty. June 24, 2019) (finding that "the 'first filed' rule must have some vitality in a post-Cyan world"). The fact that Plaintiffs commenced this action before the EDNY Action therefore significantly favors litigation of Plaintiffs' '33 Act claims in this court.
C. Expertise
Moving Defendants argue that federal courts have "greater experience and familiarity" with federal claims and because this action only brings federal claims, the federal court is the better forum. Moving Defendants also note that pre-Cyan, the majority of New York federal courts barred plaintiffs from proceeding with '33 Act claims in state court. However, these cases are irrelevant, as the Supreme Court expressly held in Cyan that state courts have jurisdiction to "adjudicate class actions alleging only 1933 Act violations." Cyan, 138 S.Ct. at 1078. 
Moreover, the Commercial Division is a long-standing, specialized business court which deals exclusively with complex commercial litigation. The federal courts have general dockets of both criminal and civil actions. Consideration of expertise weighs in favor of keeping this action in the Commercial Division. See Hoffman, 2019 WL 2578360 at *2 (noting that the "liability issues in a 1933 Act case are, if anything, less complex than issues the Commercial Division resolves every week").
D. Duplication of effort
Moving Defendants assert that absent a stay, they will have to duplicate efforts to litigate the same claims in two courts. Plaintiffs correctly argue that this concern is tempered by the alleged untimeliness of the '33 Act claims in the EDNY Action. The possibility that at some point there might be two trials is not an appropriate basis for granting a stay. Mt. McKinley Ins. Co. v. Corning Inc., 33 AD3d 51, 59 (1st Dept. 2006) (citation omitted).
Moving Defendants remaining arguments in favor of a stay are unavailing. Also, I note that Moving Defendants do not cite to any post-Cyan case in support of their [*7]arguments in favor of staying this action and the cases they do cite are inapposite.[FN5]
Indeed, there are no decisions by the New York appellate courts addressing a motion to stay a '33 Act claim in favor of a later filed federal court action in a post-Cyan universe.
In sum, after review of the factors enunciated in Asher and in accordance with Cyan, I decline to stay this action in favor of the later-filed EDNY Action.
II. Motion for Discovery Stay
According to Moving Defendants, Plaintiffs should not be permitted to "skirt the PSLRA's mandatory stay of discovery, which automatically stays all discovery until any motions to dismiss have been resolved." Moving Defendants contend that the PSLRA's discovery stay applies to all private actions including those in state court and that if Congress intended the stay to only apply to federal court actions, it would have said so.
Cyan did not address the applicability of the PSLRA's automatic stay to state court '33 Act cases.[FN6]
Nor do there appear to be any New York cases concerning this issue. States that have considered the relationship of the PSLRA discovery stay to state actions are divided. See, e.g. Switzer v. W.R. Hambrecht & Co., Nos. CGC-18-564904, CGC-18-565324, 2018 WL 4704776, at *1 (Cal. Super. Ct. Sept. 19, 2018) (stating that "[t]he Court finds that the PSLRA's provision for a discovery stay is of a procedural nature, and therefore only applies to actions filed in federal court, not state court."); cf. City of Livonia Retiree Health and Disability Benefits Plan v. Pitney Bowes Inc., No. X08-FST-CV-18-6038160-S (Conn. Super. Ct. May 15, 2019) (concluding that the plain meaning of the phrase "any private action arising under this subchapter" in the PSLRA means that the discovery stay applies to securities claims brought in state courts). 
Application of the federal PSLRA automatic discovery stay would undermine Cyan's holding that '33 Act cases may be heard in state courts. Cyan, 138 S.Ct. at 1078. Accordingly, I am persuaded that the PSLRA's automatic discovery stay is not applicable to an action brought in New York State court. Lastly, in the Commercial Division discovery generally continues during motion practice. I therefore decline to stay discovery in this action.
In accordance with the foregoing, it is
ORDERED that the motion by defendants PPDAI Group, Inc., Credit Suisse [*8]Securities (USA) LLC, Citigroup Global Markets Inc., Keefe, Bruyette & Woods, Law Debenture Corporate Services Inc., and Giselle Manon to stay Plaintiffs' action is denied; and it is further
ORDERED that the motion by defendants PPDAI Group, Inc., Credit Suisse Securities (USA) LLC, Citigroup Global Markets Inc., Keefe, Bruyette & Woods, Law Debenture Corporate Services Inc., and Giselle Manon for an order staying discovery pending resolution of any motions to dismiss is denied; and it is further
ORDERED that Defendants are directed to serve an answer to the complaint within thirty (30) days of the date of this decision and order; and it is
ORDERED that counsel are directed to appear for a status conference at 60 Centre Street, Room 208 on August 28, 2019 at 2:15pm.
This constitutes the decision and order of the Court.
$SIG$
DATE: 7/1/2019
SALIANN SCARPULLA, J.S.C.



Footnotes

Footnote 1:The federal action, entitled Lai v. PPDAI Group, Inc., No. 18-cv-6716, is pending in the United States District Court for the Eastern District of New York (the "EDNY Action").


Footnote 2:The consolidated amended complaint ("CAC") also includes numerous individual defendants who were officers and directors of PPDAI. These defendants are not part of the motions before me.


Footnote 3:http://ir.ppdai.com

Footnote 4:Moving Defendants' position concerning the relevance of the statute-of-limitations issue in federal court is not entirely consistent. First, in their reply brief, Moving Defendants state that "even if the Securities Act claims in the Federal Action are adjudicated to be untimely this has no impact on this motion." Moving Defendants' cite to Reaves v. Kessler, No. 654485/2015, 2017 WL 2482948 (Sup. Ct. NY Cty. June 8, 2017) in support of this argument but that case is distinguishable. In Reaves, which is non-binding on this Court, the court stated that there was no case requiring it to "weight the relative merits of the federal action and the state action as a factor in determining whether to impose a stay." Id. at *11. Here, however, Plaintiffs do not argue that this action is more meritorious than the EDNY Action. Rather, Plaintiffs argue that '33 Act claims will be dismissed in the EDNY Action due to a procedural defect. 
Second, at oral argument, defense counsel initially represented that Moving Defendants did "not anticipate moving to dismiss on statute of limitations grounds in the federal court" and that Plaintiffs' statute-of-limitations argument was therefore a non-issue. However, at the end of oral argument, defense counsel amended Moving Defendants' position, stating that "[i]f the state court plaintiffs didn't have standing or the Court lacked jurisdiction, which we could obviously learn in discovery, there could be circumstances where the case would be time barred." Moving Defendants' varying statements/positions about the relevance of the statute-of-limitations issue in federal court underscores that it is not a "non-issue."


Footnote 5:For example, Moving Defendants heavily rely on Barron v. Bluhdorn, 68 AD2d 809 (1st Dept. 1979) which not only pre-dates Cyan but also predates the existence of the Commercial Division.


Footnote 6:The PSLRA, in relevant part, states "[i]n any private action arising under this subchapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds, upon the motion of any party, that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 77z-1(b)(1).